**Luddie FORT and James Bookwalter, Plaintiffs-Appellants,**

v.

**Robert C. WHITE d/b/a Robert C. White Co. Realtors, Defendant-Appellee.**

No. 388, Docket 75–7407.

United States Court of Appeals, Second Circuit.

Argued Jan. 8, 1976.

Decided Feb. 9, 1976.

---

1114

Frank Cochran, Hartford, Conn. (Schweitzer & Mayor, Bruce C. Mayor, Hartford, Conn., on the brief), for plaintiffs-appellants.

Arnold E. Buchman, Hartford, Conn., for defendant-appellee.

J. Stanley Pottinger, Asst. Atty. Gen., Washington, D.C., Peter C. Dorsey, U. S. Atty., New Haven, Conn., Brian K. Landsberg, Walter W. Barnett, Neal J. Tonken, Attys., Dept. of Justice, Washington, D.C., for amicus curiae U. S.

Before FEINBERG, MULLIGAN and ANDERSON, Circuit Judges.

MULLIGAN, Circuit Judge:

This action was initially brought as a class action in June 1974 in the United States District Court for the District of Connecticut by plaintiffs Luddie Fort, a black woman, and James Bookwalter, a white male, against Robert C. White, doing business as Robert C. White Co. (White) under Title VIII of the Civil Rights Act of 1968 (42 U.S.C. § 3601 et seq.), and the Civil Rights Act of 1871 (42 U.S.C. § 1982). The plaintiffs complained that White, a realtor who managed some 1500 apartment units in the greater Hartford, Connecticut area, had racially discriminated in the rental of apartment units against Fort, a black, and others similarly situated. Bookwalter, a white tenant in a building managed by White and in which Fort sought to lease an apartment, complained on behalf of himself and others similarly situated of the loss of the benefits of interracial housing by reason of White's alleged discrimination, see *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). The plaintiffs sought a declaratory judgment that the conduct of White was illegal, a permanent injunction against such conduct and in favor of a plan of affirmative action, actual and punitive damages, and reasonable costs and attorneys' fees. The defendants filed a motion to dismiss on June 25, 1974 which was denied by Judge M. Joseph Blumenfeld after a hearing in which he also denied the plaintiffs' application for a preliminary injunction. This opinion of October 25, 1974 is reported in 383 F.Supp. 949.

On December 17, 1974, the date set for trial, the United States filed its own suit against White pursuant to 42 U.S.C. § 3613. In settlement of that suit White entered into a consent decree which enjoined him and his agents from such illegal conduct and which mandated an affirmative action plan. (*United States v. White*, Civ.No. H–74–392 (D.Conn. Dec. 18, 1974). The plaintiffs Fort and Bookwalter joined in the decree and agreed not to press their claim for injunctive relief. The court below found that the request for declaratory relief, although not explicitly disclaimed, was to be considered abandoned. No claim in that respect is made here. In view of the court decree as well as the judgment below, the question of declaratory relief is now academic. Moreover, counsel for plaintiffs also represented that they were no longer seeking certification of their suit as a class action. The case went to trial and on March 13, 1975 Judge Blumenfeld entered a Memorandum of Decision (unreported) in which he determined that the defendant's agents had indeed engaged in racially discriminatory rental practices in violation of 42 U.S.C. § 3604. However, the court awarded no actual damages, no punitive damages, and no

attorneys' fees but did award the plaintiffs costs and nominal damages in the sum of $1.00 to each plaintiff. On March 27, 1975 the plaintiffs filed a motion to reconsider denial of counsel fees and punitive damages. That motion was denied on April 2, 1975, judgment was entered on June 30, 1975, and this appeal by the plaintiffs followed.

## I. Damages

 On appeal, the plaintiffs claim error in the refusal of the court below to award compensatory damages. The issue is somewhat confused since plaintiffs' counsel at the commencement of this trial represented in open court that compensatory damages were not being sought. Moreover, the plaintiffs' motion for reconsideration below was limited to the denial of the award of counsel fees and punitive damages. In its statement of the issues presented on this appeal, the appellants made no reference to compensatory damages. It may well be that plaintiffs' counsel consider that damages awarded for humiliation or embarrassment are punitive and not compensatory. If so they misunderstand basic damages principles. If the action of the defendant created mental suffering to the plaintiffs, that is actual damage which can be recovered without establishing the reckless conduct prerequisite for an award of punitive damages. See *Gostkowski v. R.C. Church of the Sacred Hearts*, 262 N.Y. 320, 324, 186 N.E. 798 (1933); C. McCormick, Damages § 88, at 315–16 & n.5 (1935); see Note, Exemplary Damages in the Law of Torts, 70 Harv.L.Rev. 516, 520–21 (1957) (recognizing that "the unbroken line of judicial authority in all but three states would seem to preclude any argument that exemplary damages 'in theory' retain any major compensatory character."). In

any event, the record is clear that plaintiffs offered no proof whatsoever that they had suffered any actual damages. The court below so held and the appellants do not claim otherwise. On appeal however it is argued that in order to recover for a "dignitary tort" [1] no proof of damages need be established. Appellant cites no authority for this proposition in its brief and on oral argument relied solely on *Seaton v. Sky Realty Co.*, 491 F.2d 634 (7th Cir. 1974). While the court in that case did state that compensatory damages for humiliation suffered by the plaintiffs may be inferred from the circumstances as well as established by testimony, it also noted that the district court found that testimony was introduced "that the plaintiff Jerome Seaton suffered great embarrassment because of the action of the defendants during his attempt with his wife to visit the property . . . ." Id. at 636. Here there was not only no proof of humiliation but the complaint, while seeking actual damages, makes no mention of humiliation or embarrassment. In view of the plaintiffs' waiver and the absence of any evidentiary basis which would allow the trier of fact to estimate or assess such damages, we find no error in the denial of compensatory damages.

 Neither can we find any error in the denial of punitive damages. 42 U.S.C. § 3612(c) permits the court, "as it deems appropriate . . . [to] award to the plaintiff . . . not more than $1,000 punitive damages . . . ." The appellants' claim here rests on the proposition that since White's employees, two superintendents of buildings managed by him, were active participants in discriminatory acts, White on the principle of respondeat superior is liable for punitive damages; otherwise, in the words of appellants' brief, "it will be a

---

1. The term was used in Mr. Justice Marshall's opinion *Curtis v. Loether*, 415 U.S. 189, 196 n.10, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974): "An action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of mental distress. Indeed, the contours of the latter tort are still developing, and it has been sug-

gested that 'under the logic of the common law development of a law of insult and indignity, racial discrimination might be treated as a dignitary tort.' C. Gregory & H. Kalven, Cases and Materials on Torts 961 (2d ed.1969)." Like the instant case, *Curtis* was a private action brought under the fair housing provisions of Title VIII.

near impossibility to hold the principles [sic] of any large company liable in punitive damages for the actions of their subordinates." No authority for this position is cited and none has been discovered. In fact, the law is well established to the contrary. *Marr v. Rife*, 503 F.2d 735, 744–45 (6th Cir. 1974). It is generally recognized that punitive damages are assessed against an employer for the torts of his employee only where the former "in some way authorized, ratified or fostered the acts complained of." *Williams v. City of New York*, 508 F.2d 356, 360–61 (2d Cir. 1974). The court below properly observed that "[t]he employer himself must be shown to have acted or failed to act to prevent known or wilfully disregarded actions of his employee to be liable in punitive damages." The findings of fact here established that two building superintendents showed and rented apartments in a racially discriminatory manner. However there was no evidence that anyone else in the White organization was aware of this behavior, and there was no evidence that anyone else in White's company had similar policies. White testified at the trial on the merits (without any cross-examination at all) that prior to the institution of this lawsuit he had no knowledge or policy of racial discrimination in buildings his company managed. At the hearing on the plaintiffs' application for a preliminary injunction, White testified that several months before the actions complained of in this case, he had sent all of his superintendents a letter explaining and mandating compliance with his policy of nondiscrimination. After this lawsuit was commenced he sent another letter to each superintendent repeating this policy and enclosing a copy of the relevant statute (42 U.S.C. § 3601 et seq.). Each superintendent was requested to sign a pledge to comply with the law and a fair housing poster (also distributed by White) was to be prominently displayed in each building. As noted by the court below, each of the offending superintendents was over 70, both were relieved of all responsibility for showing or renting apartments after this suit was filed and one was thereafter terminated. In view of the evidence and the findings of fact below, we find no abuse of discretion here in denying the plaintiffs an award of punitive damages. *Stolberg v. Members of Bd. of Trustees*, 474 F.2d 485, 489 (2d Cir. 1973). See also *Steele v. Title Realty Co.*, 478 F.2d 380, 384 (10th Cir. 1973).

## II. Attorneys' Fees

The question of whether the court below properly refused to award the plaintiffs attorneys' fees is more difficult. Plaintiffs' claim under 42 U.S.C. § 1982 for counsel fees is foreclosed by the holding of *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which adhered to the traditional American rule which stipulates that attorneys' fees are not usually recoverable by the prevailing litigant in federal litigation unless Congress so provides. However here Congress has so provided under 42 U.S.C. § 3612(c) which expressly authorizes the awarding of fees to the prevailing party in private fair-housing suits in an appropriate case. Plaintiffs urge that we should apply the so-called *Newman-Northcross* rule [2] which, in cases involving actions under Title II of the Civil Rights Act of 1964 and the Emergency School Aid Act of 1972,[3] routinely permit the prevailing party to recover counsel fees unless special circumstances render such an award unjust. The rationale underlying these cases is that private parties who commence such litigation are "private attorneys general" vindicating a policy to which Congress gave the high-

**2.** Derived from *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam) and *Northcross v. Board of Educ.*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (per curiam).

**3.** *Newman* was the Title II case (§ 204, 78 Stat. 244, 42 U.S.C. § 2000a–3), and *Northcross* dealt with the Emergency School Aid Act (§ 718, 86 Stat. 369, 20 U.S.C. § 1617).

est priority, the elimination of racial discrimination. The award of counsel fees encourages private enforcement of statutes directing the elimination of discriminatory practices. The appellants urge that the *Newman-Northcross* rule should be applied to § 3612(c) and that counsel fees should thus have been awarded. As the court below recognized, there is authority for the appellants' position. *Hairston v. R & R Apts.*, 510 F.2d 1090, 1092 (7th Cir. 1975); *Jeanty v. McKey & Poague, Inc.*, 496 F.2d 1119, 1121 (7th Cir. 1974); *Stevens v. Dobs, Inc.*, 373 F.Supp. 618, 620–21 (E.D.N.C.1974), all applied the *Newman-Northcross* rationale to § 3612 suits. However, we agree with the court below that the *Newman-Northcross* rule was based in part on the premise that the statutes there construed provided only for injunctive relief and not for compensatory or punitive damages. The court in *Newman* expressly referred to the inability of the private litigant to secure damages in a Title II action under the Civil Rights Act of 1964, 390 U.S. at 402, 88 S.Ct. 964. An award of counsel fees therefore encouraged individuals to seek judicial relief which, through the injunctive remedy, achieved success not only for the individual plaintiff but others similarly circumstanced. § 3612(c) however, as we have noted, expressly provides for actual as well as punitive damages so that the successful litigant in the usual case will be able to pay his counsel fees out of damages; hence we cannot accept the argument that every successful litigant is entitled to counsel fees as a matter of course. In *Northcross* moreover the Court, in following *Newman*, noted: "The similarity of language in § 718 [of the 1972 Emergency School Aid Act, construed in *Northcross*] and § 204(b) [of the Civil Rights Act of 1964, construed in *Newman*] is, of course, a strong indication that the two statutes should be interpreted *pari passu*," 412 U.S. at 428, 93 S.Ct. at 2202. We note that in § 3612(c) the Congress did not adopt the same language as that construed in *Newman* and *Northcross* but rather limited the award of counsel fees to a plaintiff who "in the opinion of the

court is not financially able to assume said attorney's fees." This limitation suggests that a routine award was not to be made.

■ At the same time we cannot agree with the determination below that attorneys' fees should be denied here. The court below relied primarily upon the theory that since the defendant was not personally culpable and was only liable on a respondeat superior theory, an award of attorneys' fees would be unjust. The court cites *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973) which does refer to the power of the federal court in the exercise of its equitable powers to award attorneys' fees when a defendant has acted in bad faith, vexatiously, wantonly or oppressively. This theory would make the award of attorneys' fees punitive damages. However, *Hall* is premised on the absence of express statutory authority and the court was addressing its comments solely to the equitable powers of the trial court. Here, since the statute expressly confers discretion on the trial court, we do not agree that the award is only to be granted where the defendant's conduct has been egregious, and the court below was in error in so holding. In sum, we hold that there is no presumption in favor of an award of counsel fees in a Title VIII proceeding but at the same time reject the view that counsel fees are only to be awarded when the defendant has acted oppressively or wantonly.

■ It is a matter of discretion for the trial judge but in the exercise of that discretion the role of counsel acting not only on behalf of his client but others similarly situated cannot be ignored. The court below states that since the plaintiffs had waived the injunctive and declaratory relief originally claimed because the United States had brought suit before this action went to trial, the plaintiffs have not acted as private attorneys general. However, as the United States has pointed out in its amicus

brief on this appeal, the record is undisputed that counsel for the private plaintiffs here furnished the Department of Justice with information concerning the charged discrimination and actively participated in the negotiation of the consent decree. Moreover the consent decree itself recited that "the Court has consolidated the two cases for purposes of this Decree." The decree was signed not only by counsel for the United States and for defendant but by counsel for the private parties as well. In view of this contribution we feel that the plaintiffs may be recognized as having rendered substantial service to the community and that on this basis attorneys' fees should be awarded. In this case the plaintiffs have received no compensatory or punitive damages so that some award, in an amount we leave to the discretion of the court below, is particularly appropriate. In view of the fact that a finding that the plaintiffs are not financially able to assume such fees is mandated by the statute, we also remand for that purpose as a necessary premise to any award.

Affirmed in part, reversed in part, and remanded.