**Thomas ZARCONE, Plaintiff,**

v.

**William M. PERRY, James Windsor, Robert J. Anderson, Patrick Giambalvo, Philip F. Corso, Eugene R. Kelley and the County of Suffolk, New York, Defendants.**

**No. 75 C 1619.**

United States District Court, E. D. New York.

Sept. 21, 1977.

Firestone & Chekenian, Hauppauge, N. Y., for plaintiff; Arnold B. Firestone, Hauppauge, N. Y., of counsel.

O'Brien, Kelly & Rode, Riverhead, N. Y., for defendant James Windsor.

Curtis, Hart & Zaklukiewicz, Merrick, N. Y., for defendant William M. Perry.

### Memorandum of Decision and Order

MISHLER, Chief Judge.

On April 30, 1975, at about 7:20 P.M., William M. Perry, a district judge of Suffolk County, presiding over night traffic court in Hauppauge, requested Deputy Sheriff James Windsor to buy coffee from Thomas Zarcone, a coffee vendor, who was regularly stationed outside the courthouse. After tasting the coffee and expressing disapproval of its quality, Perry directed Windsor to bring Zarcone before him, and, if necessary, place him in handcuffs. He also suggested that Robert J. Anderson and Patrick Giambalvo, police officers present in his chambers at the time, accompany Windsor. Zarcone was handcuffed and brought before Perry. On September 30, 1975, Zarcone filed a complaint against Perry, Windsor, Anderson, Giambalvo and the County of Suffolk under 42 U.S.C. § 1983, and against Eugene R. Kelley, Commissioner of Police of Suffolk County, and Frank J. Corso, Sheriff of Suffolk County, charging the negligent training and supervision of police officers and deputy sheriffs. The court dismissed the complaint against the County of Suffolk in a memorandum of decision and order dated March 22, 1976, and against Corso and Kelley in a memorandum of decision and order dated April 6, 1976.[1]

On July 20, 1977, a verdict was rendered after trial by jury in favor of Zarcone and against Perry and Windsor. The jury awarded compensatory damages of $80,000 and punitive damages of $61,000 ($60,000 against Perry and $1,000 against Windsor). The jury found in favor of Anderson and Giambalvo. Judgment was entered on July 20, 1977. Plaintiff now moves under 42 U.S.C. § 1988 for ". . . a reasonable attorney's fee as part of the costs."[2]

The Congress authorized the award of reasonable attorneys' fees as part of the costs in Civil Rights Acts not otherwise authorized,[3] in response to *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) and *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct.

---

1. The court is advised that an action is pending in the state court against Kelley, Corso and the County of Suffolk based on the incident of April 30, 1975.

2. 42 U.S.C. § 1988 was amended (effective October 19, 1976) by the addition of the following sentence:

   In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act

   of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

3. The Civil Rights Act of 1964 provided for the award of reasonable attorneys' fees in Title II (discrimination in places of public accommodations, Section 204(b) of the Act (42 U.S.C. § 2000a–3(b)) and Title VII (discrimination in employment, Section 706(k) of the Act (42 U.S.C. § 2000e–5(k)). Voting Rights Act Amendments of 1975 (denial or abridgment of right to vote on account of race or color) (42 U.S.C. § 1973*l* (e)).

2586, 49 L.Ed.2d 415 (1976).[4] In those cases, the Supreme Court refused to award attorneys' fees to the prevailing plaintiffs on the ground that such costs are not usually recoverable in federal litigation unless Congress so provides. The Court held in *Runyon*:

As the court recounted in some detail in *Alyeska, supra,* 421 U.S. at 247, 95 S.Ct. at 1616 *passim,* the law of the United States, but for a few well recognized exceptions not present in this case, has always been that absent explicit congressional authorization, attorney's fees are not a recoverable cost of litigation. Hence, in order to 'furnish' an award of attorney's fees, we would have to find that at least as to cases brought under statutes to which § 1988 applies, Congress intended to set aside this longstanding American rule of law. We are unable to conclude, however, from the generalized commands of § 1988 that Congress intended any such result.

*Id.* at 2601 (footnote omitted).

■ The award of an attorney's fee is not mandatory. The discretionary authority preserved in the amendment indicates a Congressional intent that some prevailing litigants in civil rights actions should not be awarded an attorney's fee. In providing for the award of an attorney's fee in the civil rights area, Congress recognized that such laws, to a large degree, are privately enforced, and that often the citizen who sues to enforce the law is unable to bear the cost of litigation. As was stated in the Senate Report:

[a]ll of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

S.Rep. No. 94–1011, 94th Cong., 2nd Sess. 2 (1976) *reprinted in* 5 U.S. Code Cong. & Admin.News pp. 5908, 5910.

The reference in the Senate Report[5] to the opinions in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) and *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973) is significant. *Newman* was a class action seeking to enjoin racial discrimination at five drive-in restaurants and a sandwich shop. The Court noted:

When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. A Title II suit is thus private in form only.

*Id.* at 401, 88 S.Ct. 966 (footnote omitted). In *Cole v. Hall,* 462 F.2d 777 (2d Cir. 1972), *aff'd sub nom. Hall v. Cole, supra,* Mr. Justice Clark, writing for the Court of Appeals, held that in vindicating the right of free speech of union members under Section 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(2) ". . . he [Cole] was not vindicating his rights of free speech alone but those of every member of the union as well. Indeed, his success in maintaining this right at union meetings inured to the benefit of union members everywhere." *Id.* at 780.

Plaintiff's claim is one solely for damages. It is basically a tort action for false arrest and imprisonment couched in the language of a violation of the constitutional right to due process. Only in a general, indirect sense did Zarcone's successful litigation vindicate the public's right to due process. It did so to the degree that every successful plaintiff in a personal injury ac-

---

**4.** *Alyeska* was an action by several environmental groups to enjoin the Secretary of Interior and others from granting rights of way and special land use permits necessary to construct the Alaska pipeline on a claim of a violation of the Mining Lease Act of 1920, 30 U.S.C. § 185, and of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.* (150 U.S.App.

D.C. 121, 479 F.2d 842); *Runyon* was a class action charging racial discrimination in denying admission of black students into private schools in violation of 42 U.S.C. § 1981.

**5.** Appended hereto are the pertinent portions of the Senate Report.

tion vindicates the public's right not to be injured through the negligent conduct of an operator of a motor vehicle, a doctor, or a lawyer.

■ Prevailing plaintiffs in civil rights actions are not routinely granted attorneys' fees simply because they are awarded damages. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). Rather, it is only when plaintiffs advance the public interest by bringing the action that an award of attorneys' fees is proper. The award of damages to this type of litigant does not detract from the concept that their lawyers are acting as private attorneys general. Thus, in actions based on Title VII of the Civil Rights Act of 1964, litigants who were awarded monetary damages *and* who also vindicated rights of a class based on race, color or sex have been granted attorneys' fees. *E. g., Allen v. Amalgamated Transit Union, Local 788,* 415 F.Supp. 662 (E.D.Mo.1976) (back pay and punitive damages granted on a claim of racial discrimination by the union); *Harrington v. Vandalia-Butler Board of Education,* 418 F.Supp. 603 (S.D.Ohio 1976) (back pay denied but damages granted on a claim of sex discrimination—female working conditions inferior to those of male); *Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 503 F.2d 177 (1974) (damages for back pay and harassment granted on claim of sex discrimination by union and employer hotel). Our research has disclosed that in every action brought under Title VII of the Civil Rights Act of 1964 where damages have been awarded and attorneys' fees

granted, the interest of the public or an identifiable class has been benefited.[6]

■ We find support for our position in *Fort v. White,* 530 F.2d 1113 (2d Cir. 1976).[7] In discussing the factors it considers in awarding attorneys' fees to prevailing parties in private fair housing suits pursuant to 42 U.S.C. § 3612(c),[8] the Court stated:

> The award of counsel fees encourages private enforcement of statutes directing the elimination of discriminatory practices. . . . An award of counsel fees [encourages] individuals to seek judicial relief which, through the injunctive remedy [achieves] success not only for the individual plaintiff but others similarly circumstanced. § 3612(c) however as we have noted, expressly provides for actual as well as punitive damages so that the successful litigant in the usual case will be able to pay his counsel fees out of damages; hence we cannot accept the argument that every successful litigant is entitled to counsel fees as a matter of course.

*Id.* at 1118.

In directing the award of counsel fees, the Court further said:

> It is a matter of discretion for the trial judge but in the exercise of that discretion the role of counsel acting not only on behalf of his client but others similarly situated cannot be ignored. . . . In view of this contribution we feel that the plaintiffs may be recognized as having rendered substantial service to the com-

6. Appended hereto are all reported Title VII cases in which damages and attorneys' fees were awarded.

7. *Fort v. White, supra,* was a claim based on Title VIII of the Civil Rights Act of 1968 (discrimination in housing). Plaintiff claims that defendant, a real estate managing agent, discriminated against blacks. Plaintiffs sought declaratory judgment, compensatory and punitive damages and attorneys' fees. Plaintiff waived compensatory damages; the court affirmed the finding of no punitive damages and reversed the denial of attorneys' fees. The United States filed an action based on defendant's discriminatory practices which was settled by a

consent decree enjoining the illegal practices and mandating an affirmative action plan.

8. This statute provides that:

> (c) The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided,* That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees.

munity and that on this basis attorneys' fees should be awarded.[9]

*Id.* at 1118–19.

The motion for the award of counsel fees is in all respects denied, and it is

SO ORDERED.

## APPENDIX I

## ATTORNEY'S FEES AWARDS ACT
### P.L. 94–559

\*   \*   \*   \*   \*   \*

### PURPOSE

This amendment to the Civil Rights Act of 1866, Revised Statutes Section 722, gives the Federal courts discretion to award attorneys' fees to prevailing parties in suits brought to enforce the civil rights acts which Congress has passed since 1866. The purpose of this amendment is to remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's recent decision in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240 (1975),[1] and to achieve consistency in our civil rights laws. . . .

---

1. 95 S.Ct. 1612, 4 L.Ed.2d 141.

---

### STATEMENT

The purpose and effect of S. 2278 are simple—it is designed to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866. S. 2278 follows the language of Titles II and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–3(b) and 2000e–5(k), and section 402 of the Voting Rights Act Amendments of 1975, 42 U.S.C. § 1973*l*(e). All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a

meaningful opportunity to vindicate the important Congressional policies which these laws contain.

In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

[page 3]

Congress recognized this need when it made specific provision for such fee shifting in Titles II and VII of the Civil Rights Act of 1964:

When a plaintiff brings an action under [Title II] he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the Federal courts. Congress therefore enacted the provision for counsel fees—\* \* \* to encourage individuals injured by racial discrimination to seek judicial relief under Title II." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 (1968).[2]

The idea of the "private attorney general" is not a new one, nor are attorneys' fees a new remedy. Congress has commonly authorized attorneys' fees in laws under which "private attorneys general" play a significant role in enforcing our policies. We have, since 1870, authorized fee shifting under more than 50 laws, including, among others, the Securities Exchange Act of 1934,

---

9. The court found that plaintiffs' counsel (i) furnished the Department of Justice with information concerning racial discrimination practiced by defendant, and (ii) actively participated in the negotiation of the consent decree.

15 U.S.C. §§ 78i(c) and 78r(a), the Servicemen's Readjustment Act of 1958, 38 U.S.C. § 1822(b), the Communications Act of 1934, 42 U.S.C. § 206, and the Organized Crime Control Act of 1970, 18 U.S.C. § 1964(c). In cases under these laws, fees are an integral part of the remedy necessary to achieve compliance with our statutory policies. As former Justice Tom Clark found, in a union democracy suit under the Labor-Management Reporting and Disclosure Act (Landrum-Griffin),

> Not to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose. * * * Without counsel fees the grant of Federal jurisdiction is but an empty gesture * * *. *Hall v. Cole,* 412 U.S. 1 (1973),[3] quoting 462 F.2d 777, 780–81 (2d Cir. 1972).

The remedy of attorneys' fees has always been recognized as particularly appropriate in the civil rights area, and civil rights and attorneys' fees have always been closely interwoven. In the civil rights area, Congress has instructed the courts to use the broadest and most effective remedies available to achieve the goals of our civil rights laws.[1] The very first attorneys' fee statute was a civil rights law, the Enforcement Act of 1870, 16 Stat. 140, which provided for attorneys' fees in three separate provisions protecting voting rights.[2]

Modern civil rights legislation reflects a heavy reliance on attorneys' fees as well. In 1964, seeking to assure full compliance with the Civil Rights Act of that year, we authorized fee shifting for private suits establishing violations of the public accommodations and equal employment provisions. 42 U.S.C. §§ 2000a–3(b) and 2000e–5(k). Since 1964, every major civil rights law passed by the Congress has included, or has been amended to include, one or more fee provisions.

---

1. For example, the Civil Rights Act of 1866 directed Federal courts to "use that combination of Federal law, common law and State law as will be best adapted to the object of the civil rights laws." *Brown v. City of Meridian, Missis-*

*sippi,* 356 F.2d 602, 605 (5th Cir. 1966). See 42 U.S.C. § 1988; *Lefton v. City of Hattiesburg, Mississippi,* 333 F.2d 280 (5th Cir. 1964).

2. The causes of action established by these provisions were eliminated in 1894. 28 Stat. 36.

2. 88 S.Ct. 964, 19 L.Ed.2d 1263.

3. 93 S.Ct. 193, 36 L.Ed.2d 702.

---

[page 4]

E.g., Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3612(c); the Emergency School Aid Act of 1972, 20 U.S.C. § 1617; the Equal Employment Amendments of 1972, 42 U.S.C. § 2000e–16(b); and the Voting Rights Act Extension of 1975, 42 U.S.C. § 1973*l*(e).

These fee shifting provisions have been successful in enabling vigorous enforcement of modern civil rights legislation, while at the same time limiting the growth of the enforcement bureaucracy. Before May 12, 1975, when the Supreme Court handed down its decision in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240 (1975),[4] many lower Federal courts throughout the Nation had drawn the obvious analogy between the Reconstruction Civil Rights Acts and these modern civil rights acts, and, following Congressional recognition in the newer statutes of the "private attorney general" concept, were exercising their traditional equity powers to award attorneys' fees under early civil rights laws as well.[3]

These pre-*Alyeska* decisions remedied a gap in the specific statutory provisions and restored an important historic remedy for civil rights violations. However, in *Alyeska,* the United States Supreme Court, while referring to the desirability of fees in a variety of circumstances, ruled that only Congress, and not the courts, could specify which laws were important enough to merit fee shifting under the "private attorney general" theory. The Court expressed the view, in dictum, that the Reconstruction Acts did not contain the necessary congressional authorization. This decision and dictum created anomalous gaps in our civil rights laws whereby awards of fees are, according to *Alyeska,* suddenly unavailable in the most fundamental civil rights cases. For instance, fees are now authorized in an

employment discrimination suit under Title VII of the 1964 Civil Rights Act, but not in the same suit brought under 42 U.S.C. § 1981, which protects similar rights but involves fewer technical prerequisites to the filing of an action. Fees are allowed in a housing discrimination suit brought under Title VIII of the Civil Rights Act of 1968, but not in the same suit brought under 42 U.S.C. § 1982, a Reconstruction Act protecting the same rights. Likewise, fees are allowed in a suit under Title II of the 1964 Civil Rights Act challenging discrimination in a private restaurant, but not in suits under 42 U.S.C. § 1983 redressing violations of the Federal Constitution or laws by officials sworn to uphold the laws.

This bill, S. 2278, is an appropriate response to the *Alyeska* decision. It is limited to cases arising under our civil rights laws, a category of cases in which attorneys fees have been traditionally regarded as appropriate. It remedies gaps in the language of these civil rights laws by providing the specific authorization required by the Court in *Alyeska*, and makes our civil rights laws consistent.

It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by S. 2278, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968).[4]

---

3. These civil rights cases are too numerous to cite here. See e.g., *Sims v. Amos*, 340 F.Supp. 691 (M.D.Ala.1972), aff'd, 93 S.Ct. 290, 409 U.S. 942, 34 L.Ed.2d 215 (1972); *Sanford Daily v. Zurcher*, 366 F.Supp. 18 (N.D.Cal.1973); and cases cited in *Alyeska Pipeline, supra*, at n. 46. Many of the relevant cases are collected in "Hearings on the Effect of Legal Fees on the Adequacy of Representation Before the Subcom. on Representation of Citizen Interests of the Senate Comm. on the Judiciary," 93d Cong., 1st sess., pt. III, at pp. 888–1024, and 1060–62.

4. 88 S.Ct. 964, 19 L.Ed.2d 1263. In the large majority of cases the party or parties seeking to enforce such rights will be the plaintiffs and/or plaintiff-intervenors. However, in the procedural posture of some cases, the parties seeking to enforce such rights may be the defendants and/or defendant-intervenors. See, e.g., *Shelley v. Kraemer*, 334 U.S. 1 (1948).

4. 95 S.Ct. 1612, 44 L.Ed.2d 141.

---

[page 5]

Such "private attorneys general" should not be deterred from bringing good faith actions to vindicate the fundamental rights here involved by the prospect of having to pay their opponent's counsel fees should they lose. *Richardson v. Hotel Corporation of America*, 332 F.Supp. 519 (E.D.La.1971), aff'd, 468 F.2d 951 (5th Cir. 1972). (A fee award to a defendant's employer, was held unjustified where a claim of racial discrimination, though meritless, was made in good faith.) Such a party, if unsuccessful, could be assessed his opponent's fee only where it is shown that his suit was clearly frivolous, vexatious, or brought for harassment purposes. *United States Steel Corp. v. United States*, 385 F.Supp. 346 (W.D.Pa.1974), aff'd, 9 E.P.D. ¶ 10,225 (3d Cir. 1975). This bill thus deters frivolous suits by authorizing an award of attorneys' fees against a party shown to have litigated in "bad faith" under the guise of attempting to enforce the Federal rights created by the statutes listed in S. 2278. Similar standards have been followed not only in the Civil Rights Act of 1964, but in other statutes providing for attorneys' fees. E.g., the Water Pollution Control Act, 1972 U.S.Code Cong. & Adm.News 3747; the Marine Protection Act, Id. at 4249–50; and the Clean Air Act, Senate Report No. 91–1196, 91st Cong., 2d Sess., p. 483 (1970). See also *Hutchinson v. William Barry, Inc.*, 50 F.Supp. 292, 298 (D.Mass.1943) (Fair Labor Standards Act).

In several hearings held over a period of years, the Committee has found that fee awards are essential if the Federal statutes to which S. 2278 applies are to be fully enforced.[5] We find that the effects of such fee awards are ancillary and incident to securing compliance with these laws, and that fee awards are an integral part of the remedies necessary to obtain such compliance. Fee awards are therefore provided in

cases covered by S. 2278 in accordance with Congress' powers under, inter alia, the Fourteenth Amendment, Section 5. As with cases brought under 20 U.S.C. § 1617, the Emergency School Aid Act of 1972, defendants in these cases are often State or local bodies or State or local officials. In such cases it is intended that the attorneys' fees, like other items of costs,[6] will be collected either directly from the official, in his official capacity,[7] from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party) . . .

---

5. See, e.g., "Hearings on the Effect of Legal Fees," supra.

6. *Fairmont Creamery Co. v. Minnesota,* 275 U.S. 168 (1927).

7. Proof that an official had acted in bad faith could also render him liable for fees in his individual capacity, under the traditional bad faith standard recognized by the Supreme Court in *Alyeska.* See *Class v. Norton,* 505 F.2d 123 (2d Cir. 1974); *Doe v. Poelker,* 515 F.2d 541 (8th Cir. 1975).

---

[page 6]

This bill creates no startling new remedy—it only meets the technical requirements that the Supreme Court has laid down if the Federal courts are to continue the practice of awarding attorneys' fees which had been going on for years prior to the Court's May decision. It does not change the statutory provisions regarding the protection of civil rights except as it provides the fee awards which are necessary if citizens are to be able to effectively secure compliance with these existing statutes. There are very few provisions in our Federal laws which are self-executing. Enforcement of the laws depends on governmental action and, in some cases, on private action through the courts. If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

\* \* \* \* \* \*

## APPENDIX II

### SECOND CIRCUIT

*Equal Employment Opportunity Commission v. Enterprise Ass'n Steamfitters Local No. 638 of U.A.,* 542 F.2d 579 (2d Cir. 1976) (back pay granted).

### FOURTH CIRCUIT

*Younger v. Glamorgan Pipe & Foundry Co.,* 418 F.Supp. 743 (W.D.Va.1976) (injunction, back pay sought; injunction, back pay granted).

### FIFTH CIRCUIT

*Watkins v. Scott Paper Co.,* 530 F.2d 1159 (5th Cir. 1976) (back pay granted); *Sagers v. Yellow Freight System, Inc.,* 529 F.2d 721 (5th Cir. 1976) (back pay granted); *Carey v. Greyhound Bus Co., Inc.,* 500 F.2d 1372 (5th Cir. 1974) (declaratory relief, injunction, back pay sought and granted); *Baxter v. Savannah Sugar Refining Co.,* 495 F.2d 437 (5th Cir. 1974) (injunction, back pay sought; back pay granted); *Peters v. Missouri Pacific R.R. Co.,* 483 F.2d 490 (5th Cir. 1973) (back pay and reinstatement granted); *Weeks v. Southern Bell Tel. & Tel. Co.,* 467 F.2d 95 (5th Cir. 1972) (injunction and back pay granted); *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir. 1972) (back pay granted); *Culpepper v. Reynolds Metals Co.,* 442 F.2d 1078 (5th Cir. 1971) (injunction and declaratory relief sought; back pay granted); *Smith v. Fletcher,* 393 F.Supp. 1366 (S.D.Tex.1975) (back pay granted); *Bing v. Roadway Express* (N.D.Ga.1972), *vacated,* 485 F.2d 441 (5th Cir. 1973) (back pay, injunction granted).

### SIXTH CIRCUIT

*Singer v. Mahoning County Bd. of Mental Retardation,* 519 F.2d 748 (6th Cir. 1975) (back pay granted).

## EIGHTH CIRCUIT

*Howard v. Ward County,* 418 F.Supp. 494 (D.N.D.1976) (injunctive relief and back pay sought and granted); *Taylor v. Ford Motor Co.,* 392 F.Supp. 254 (W.D.Mo.1974) (back pay granted).

## NINTH CIRCUIT

*Berg v. Richmond Unified School District,* 528 F.2d 1208 (9th Cir. 1975) (back pay and injunction sought and granted); *Kaplan v. International Alliance of Theatrical & Stage Employees and Motion Picture Operators of United States and Canada,* 525 F.2d 1354 (9th Cir. 1975) (back pay and injunction sought and granted); *Schaeffer v. San Diego Yellow Cabs, Inc.,* 462 F.2d 1002 (9th Cir. 1972) (back pay sought and granted).

## TENTH CIRCUIT

*Taylor v. Safeway Stores Inc.,* 524 F.2d 263 (10th Cir. 1975) (back pay sought and granted); *Muller v. U.S. Steel Corp.,* 509 F.2d 923 (10th Cir. 1975) (injunction and back pay granted); *Fabian v. Ind. Sch. Dist. No. 89 of Okl. Cty., Okla.,* 409 F.Supp. 94 (W.D. Okl.1975) (declaratory relief and back pay granted); *Tidwell v. American Oil Co.,* 332 F.Supp. 424 (D.C.Utah 1971) (back pay, injunction sought and granted).

## DISTRICT OF COLUMBIA

*McMullen v. Warner,* 416 F.Supp. 1163 (D.D.C.1976) (injunction denied, back pay granted).