Joe O. **MARTIN**, Plaintiff,

v.

Allan **HANCOCK**, Tommy Ellingson and John Brodin, Individually and as employees of the Minneapolis Police Department, Defendants.

No. Civ. 4–76–584.

United States District Court, D. Minnesota, Fourth Division.

March 19, 1979.

---

James H. Ranum, Doyle & Ranum, Minneapolis, Minn., for plaintiff.

Robert J. Alfton, City Atty., Edward R. Kenneally, Asst. City Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM and ORDER

DEVITT, Chief Judge.

Plaintiff, a young white male, brought this § 1983 civil rights action against three Minneapolis police officers, alleging an illegal arrest, unreasonable force in making the arrest, unreasonable force in detaining plaintiff after arrest, and failure to keep a police dog under reasonable control. The jury found that the arrest was legal and based on probable cause and that the force used in arresting and detaining plaintiff was reasonable. However, defendant Hancock was found negligent for not keeping the police dog under reasonable control, and as a result plaintiff was awarded damages of $2,550. Plaintiff now moves under 42 U.S.C. § 1988 for attorney's fees of $11,-630.00.

The award of attorney's fees under § 1988 is discretionary with the trial court. Because it is discretionary, an award is not required in every case. To determine how the court should exercise its discretion, the legislative history of the Civil Rights Attorney's Fees Award Act must be examined and subsequent case law analyzed.

When the Civil Rights Attorney's Fees Awards Act was enacted in 1976, the Congress was concerned with establishing an effective private enforcement mechanism to "vindicate the important Congressional policies" underlying the various Civil Rights Acts. S. Rep. No. 94–1011, 94th Cong., 2d Sess. 2, *reprinted in* [1976] U.S. Code Cong. & Admin. News, pp. 5908, 5910.

Without the fee shifting mechanism, Congress was fearful that those important acts would become dead letters, for "if successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Id.* (quoting from *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). The primary intent of the Congress in enacting the Civil Rights Attorney's Fees Awards Act of 1976 therefore is clear: to ensure that plaintiffs with meritorious "fundamental civil rights cases," which further an important public interest but do not result in an award of damages from which attorney's fees can be paid, are not discouraged from bringing suit because of the prospect of having to pay their own attorney's fees.

■ Against the backdrop of this legislative history, the question legitimately arises whether, in a case like the present one, a court in its discretion should award attorney's fees. The case law is quite clear that attorney's fees normally should be awarded, and generally for all the hours the attorney puts into the case. These cases, however, almost invariably are of the type envisioned by Congress—"fundamental" civil rights cases that vindicate an important public interest, but do not result in the award of substantial monetary damages from which the plaintiff can pay his attorney's fees. The present case is different because it is really no more than a common law negligence "dogbite" case, clothed as a § 1983 constitutional claim. No intentional deprivations of civil rights were alleged, nor is plaintiff the member of a distinct, oppressed minority group. No injunctions were sought to stop illegal police practices, nor was the public interest vindicated in any way other than in the indirect manner of most common law negligence cases. Thus, to award attorney's fees in this case, which is little more than a disguised common law negligence, personal injury damages action, would be contrary to the intent of Congress.

This court is not the only one that has been troubled by the use of important civil rights legislation, such as the attorney's fees act, for purposes other than originally intended. The Eastern District of New York faced a similar problem in *Zarcone v. Perry*, 438 F.Supp. 788 (E.D.N.Y.1977). There plaintiff's claim was solely for damages and was "basically a tort action for false arrest and imprisonment couched in the language of a violation of the constitutional right to due process." Chief Judge Mishler, in a perceptive opinion, denied attorney's fees to the prevailing plaintiff, reasoning that "it is only when plaintiffs advance the public interest by bringing the action that an award of attorneys' fees is proper." *Id.* at 791.

■ The rationale of *Zarcone* is sound and should be applied in this case. The Senate Report for the Attorney's Fees Awards Act makes clear that the Act is designed to sanction the "private attorney general" concept in civil rights actions. This concept is based on the rationale that counsel fees should be awarded by the court when the legal services have provided a benefit to a class of persons, not just the particular litigant. *See, e. g., Wechsler v. Southeastern Properties, Inc.*, 506 F.2d 631, 635 (2d Cir. 1974). In the present case, the "private attorney general" concept has no application. Plaintiff here is furthering no public interest beyond that furthered in most common law negligence cases. He has not by this action attempted to curtail deliberate violations of constitutional rights by Minneapolis police officers. He is not representing a distinct minority group. Nor can this negligence dogbite case by any stretch of the imagination be considered a "fundamental civil rights case." It is little more than a common law negligence case, and there is no reason why the citizens of Minneapolis, rather than the plaintiff, should be required to pay plaintiff's attorney's fees. Therefore, this is one of those rare cases where the court in its discretion should not award attorney's fees.

Plaintiff's motion for attorney's fees is DENIED.