**MID–HUDSON LEGAL SERVICES, INC., et al., Plaintiffs,**

v.

**G & U, INC., et al., Defendants.**

**No. 77 Civ. 3391–CSH.**

United States District Court, S. D. New York.

July 26, 1977.

As Amended July 28, 1977.

Mid-Hudson Legal Services, Inc., for plaintiffs; Howard Schell Reilly, Gene Reibman, Poughkeepsie, N.Y., Anthony Szczygiel, of counsel.

Meehan & Fink, Goshen, N.Y., for defendants; Robert W. Fink, Goshen, N.Y., of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs, consisting of a federally-funded organization whose function is to provide for legal counseling to indigent persons, and several of its attorney-employees, seek various forms of relief against defendants, a corporate farm and its proprietors, stemming from the defendants' refusal to admit certain of plaintiffs' representatives onto their premises for the purpose of distributing to migrant farmworkers a Spanish language booklet describing their rights and informing them of plaintiffs' availability to implement those rights through appropriate action. The complaint is also brought " . . . on behalf of an unknown number of migrant farmworkers," although this does not purport to be a class action, and indeed, vindication of the laborers' rights is not being sought in this proceeding. Federal jurisdiction is properly invoked under 28 U.S.C. § 1343 for averred violation of both the First and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.[1]

The facts underlying this controversy as set forth in the parties' papers and further developed at a hearing are substantially undisputed. G & U, Inc. is a farm located in the "black dirt" region of Orange County, New York, whose "labor intensive" crops such as lettuce and onions require the services of a large number of farmhands.

These laborers are seasonally recruited in Puerto Rico, and transported to the G & U farm where they are lodged at either of two sites. Both these locations offer self-contained living units which provide kitchen and sanitary facilities and a "company store" has been established on the grounds. Although it is clear that defendants do not restrain their employees from leaving the farm, it appears that the nearest populated center is several miles distant and as a practical matter, the migrant laborers' sojourn is spent largely at the farm.

The instant action was precipitated by defendants' refusal on the evening of June 13 of this year to grant plaintiff-attorneys Howard Schell Reilly ("Reilly") and Anthony Szczygiel ("Szczygiel") unsolicited access to the migrant laborers' residences. As previously noted, Reilly and Szczygiel were attempting to distribute their "Farmworker Rights Handbook for New York State", to describe briefly its contents, and to indicate their availability to counsel and represent these migrants with respect to such rights. These activities are mandated by Title III–B of the Economic Opportunity Act of 1964, 42 U.S.C. § 2861, *et seq.*, which seeks to promote the interests of migrant workers.

Defendants barred their access, however, and announced that the farm's policy would henceforth be to deny plaintiffs entry unless their visits were made at the request of a resident farmhand. Although plaintiffs had been allowed reasonable personal access to the migrants in the past, counsel at the hearing confirmed that the new policy would be followed in the future. The restrictive practice is justified in defendants' view by their right to prevent trespass and because plaintiffs are accused of acting outside the scope of their federal charter in that they foment labor unrest and impermissibly solicit clients in violation of 42 U.S.C. § 2996f(a)(5)(A).[2]

---

1. Plaintiffs have proffered a number of additional jurisdictional bases which are untenable given the procedural posture of this case. Thus, 28 U.S.C. § 1337 and 42 U.S.C. § 1985 are inapposite because the case cannot be maintained on behalf of the migrant farmworkers, none of whom are named as plaintiffs. Section 1331 of Title 28 is unavailing since there is not, and indeed cannot be, an averment that $10,000 is in issue.

2. In proper context, this provision provides:

While there exists an unmistakable animus between the parties, defendants' allegations of plaintiffs' misconduct are unpersuasive. Consequently, the farm's exclusionary policy is legally insupportable, since it is well established that where defendants have established a migrant community with the hallmarks of a "company town", plaintiffs have a First Amendment right to enter that community at reasonable times for the purpose of discussing with its inhabitants the living or working conditions prevalent at the farm. *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *Illinois Migrant Council v. Campbell Soup Co.*, 519 F.2d 391 (5th Cir. 1975); *Asociacon de Trabajadores v. Green Giant Co.*, 518 F.2d 130 (3d Cir. 1975). It matters not that the migrant workers are boarded at facilities located on land owned by the defendants. As Mr. Justice Black wrote in *Marsh v. Alabama, supra,* 326 U.S. at 506, 66 S.Ct. at 278;

"Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by those who use it."

Moreover, in asserting this First Amendment claim, plaintiffs are not improperly seeking to raise the interests of the mi-

grants, *cf. Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Evans v. Lynn*, 537 F.2d 591 (2d Cir. 1976) (*en banc*), but rather asserting their own rights of free speech. As the Attorney General of Michigan has written in connection with a case comparable to the one at bar:

"The freedoms of religion, speech, press and assembly guaranteed by the First and Fourteenth Amendments to the United States Constitution are operative throughout the length and the breadth of the land. They do not become suspended on the threshold of an agricultural labor camp. The camp is not a private island or an enclave existing without the full breadth and vitality of federal constitutional and statutory protection." Opinions of the Attorney General of Michigan, # 4727, April 13, 1971.

This sentiment has been echoed in *Franceschina v. Morgan*, 346 F.Supp. 833 (S.D. Ind.1972) and *Folgueras v. Hassle*, 331 F.Supp. 615 (W.D.Mich.1971), cases whose factual circumstances are entirely similar to those of the case at bar. Consequently, since no further hearings are necessary, a permanent injunction will issue against defendants.[3]

---

"§ 2996f. Grants and contracts—Requisites (a) With respect to grants or contracts in connection with the provision of legal assistance to eligible clients under this subchapter, the Corporation shall— . . .

"(5) insure that no funds made available to recipients by the Corporation shall be used at any time, directly or indirectly, to influence the issuance, amendment, or revocation of any executive order or similar promulgation by any Federal, State, or local agency, or to undertake to influence the passage or defeat of any legislation by the Congress of the United States, or by any State or local legislative bodies, except where— . . .

"(A) representation by an attorney as an attorney for any eligible client is necessary to the provision of legal advice and representation with respect to such client's legal rights and responsibilities (which shall not be construed to permit a recipient or an attorney to solicit a client for the purpose of making such representation possible, or to solicit a group with respect to matters of general con-

cern to a broad class of persons as distinguished from acting on behalf of any particular client); . . . "

Contrary to the thrust of defendants' papers, this language cannot be construed as prohibiting plaintiffs from making the kind of inquiries among the migrant population which are in furtherance of the legislation's objectives even though such questions may ultimately lead to litigation.

**3.** Plaintiffs also claim compensatory and punitive damages arising out of the June 13 denial of access. I deny the claim for punitive damages, in the exercise of my discretion. As for compensatory damages, they are recoverable in law if provable in fact. In the circumstances of this case it is difficult to imagine how compensatory damages could be demonstrated, but I do not foreclose the effort. If plaintiffs wish to offer proof of compensatory damages, they may move within thirty days to restore this case to my calendar for the purpose of taking evidence on the issue.

## ORDER

The defendants G & U, Inc., Harold Utter, Raymond Utter, their agents, employees and successors, are permanently enjoined from denying, delaying, hindering or interfering in any manner with plaintiffs' ingress or egress to the defendant corporation's agricultural labor camps at reasonable times for the purpose of providing the services contemplated by 42 U.S.C. § 2861, *et seq.*, regardless of whether such visits are in response to a request by a resident farmworker or are wholly unsolicited.

Counsel for plaintiffs is hereby directed to prepare and submit a proposed judgment on one day's notice.