**MID–HUDSON LEGAL SERVICES, INC., et al., Plaintiffs-Appellants,**

v.

**G & U, INC., et al., Defendants-Appellees.**

**No. 981, Docket 78–7119.**

United States Court of Appeals, Second Circuit.

Argued May 18, 1978.

Decided June 15, 1978.

Howard Schell Reilly, Poughkeepsie, N.Y. (Mid-Hudson Legal Services, Inc., Poughkeepsie, New York, Gene Reibman, Anthony Szczygiel, Poughkeepsie, N.Y., of counsel), for plaintiffs-appellants.

Robert W. Fink, Meehan & Fink, Goshen, N.Y., for defendants-appellees.

Before KAUFMAN, Chief Judge, and MULLIGAN and VAN GRAAFEILAND, Circuit Judges.

MULLIGAN, Circuit Judge:

The appellant Mid-Hudson Legal Services, Inc. (Mid-Hudson) is a federally funded legal services corporation which provides legal assistance and counselling to migrant farm workers. The appellee, G & U, Inc. (G & U) is a New York corporation which operates a farm in Orange County, New York, where it employs laborers who are seasonally recruited. The workers who, for the most part, are Blacks, Puerto Ricans, Mexican-Americans and Filipino-Americans, are lodged at the farm while harvesting lettuce and onion crops. In June, 1977 Mid-Hudson's staff attorneys attempted to enter the farm to distribute legal rights booklets, to discuss the contents with the workers and to advise them of Mid-Hudson's provision of counsel and other services to migrant workers desiring legal assistance. The attorneys were refused access to the migrant labor camp by employees of G & U.

Mid-Hudson thereupon brought an action in the United States District Court, Southern District of New York, invoking jurisdiction under the First and Fourteenth Amendments to the Constitution, 42 U.S.C. § 1983, and 28 U.S.C. § 1343. On July 28, 1977 the Hon. Charles S. Haight, Jr., United States District Judge, found, *inter alia*, that the legal services plaintiffs attempted to provide were mandated by Title III–B of the Economic Opportunity Act of 1964, 42 U.S.C. § 2861 *et seq.*, which seeks to promote the interests of migrant workers by providing free legal services. Judge Haight issued an injunction permanently prohibiting G & U and two of its officers from interfering with the plaintiffs' ingress or egress to the labor camps in question when such visits were for the purpose of providing the services contemplated by 42 U.S.C. § 2861 *et seq.* The opinion noted that the precise claims on which Mid-Hudson prevailed were the First Amendment rights of free speech and association of the Mid-Hudson staff attorneys rather than any asserted deprivation of the rights of the migrant workers. No punitive or compensatory damages were awarded to plaintiffs (who introduced no proof on the latter issue) and neither party appealed from Judge Haight's order. The facts and law are more fully set forth in Judge Haight's opinion, reported at 437 F.Supp. 60 (S.D.N.Y.1977). On Decem-

ber 3, 1977 Mid-Hudson made a motion for the allowance of costs and reasonable counsel fees in the sum of $20,831.75 pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988. In a memorandum opinion and order dated January 26, 1978 Judge Haight denied the plaintiffs' motion. This appeal ensued.

## I

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, set forth in pertinent part in the margin,[1] authorizes the district court in its discretion to allow to the prevailing party reasonable attorneys' fees as part of the costs in any action brought to enforce § 1983, among other enumerated Civil Rights Acts. The purpose of the 1976 amendment was "to remedy anomalous gaps in our civil rights laws" created by the United States Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). S.Rep. No. 94–1011, reprinted in 5 U.S. Code, Cong. & Admin. News, pp. 5908, 5909 [1976] (Senate Report).[2]

In the case at bar the district court conceded that the suit involved constitutional claims made actionable under § 1983 and that therefore the claim for attorneys' fees was within the letter of § 1988. See, e. g., *Beazer v. New York City Transit Authority*, 558 F.2d 97 (2d Cir. 1977); *Gay Lib v. University of Missouri*, 558 F.2d 848 (8th Cir. 1977), cert. denied, 434 U.S. 1080, 98

S.Ct. 1276, 55 L.Ed.2d 789 (1978). Nonetheless, Judge Haight found that an award of counsel fees in this case would not be consonant with the rationale of § 1988. No migrant workers were parties to the original suit. Nor was it brought as a class action. As noted above, plaintiffs succeeded only on the theory that Mid-Hudson's staff attorneys had been deprived of their First Amendment rights of free speech and freedom of association. The district court therefore reasoned that plaintiffs had merely vindicated their own rights rather than those of the migrant farm workers. In reaching this conclusion, Judge Haight also observed that since § 1988 contravened the common law it must be construed narrowly and applied literally.

But appellants did far more than achieve mere technical compliance with the statute. Mid-Hudson was not engaged in a simple academic exercise to vindicate the constitutional rights of its attorneys. The sole purpose of the litigation was to gain access to the workers at their place of abode in order to disseminate information and to provide legal assistance and counsel. As the district court noted in its decision on the merits, "These activities [of the plaintiffs] were mandated by 42 U.S.C. § 2861, which seeks to promote the interests of migrant farm workers." 437 F.Supp. at 61. The plaintiffs were not seeking to gain any narrow personal objective. Compare *Zarcone v. Perry*, 438 F.Supp. 788 (E.D.N.Y.1977),

---

1. § 1988 provides in relevant part:

 In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

2. In order to encourage compliance with certain civil rights laws Congress has often authorized recovery of attorneys' fees by plaintiffs who, through their private suits under such statutes, act as private attorneys general by enforcing federal policy. E. g., Title VIII of the

Civil Rights Act of 1968, 42 U.S.C. § 3612(c); the Equal Employment Amendments of 1972, 42 U.S.C. § 2000e-16(b). In accordance with this approach, prior to *Alyeska* many federal courts had exercised their traditional equity powers to award attorneys' fees under the Reconstruction Civil Rights Acts. Senate Report, *supra*, at 5911. In *Alyeska*, however, the Supreme Court held that Congress, and not the courts, was the proper body to determine which civil rights laws merited fee shifting. 421 U.S. at 269–71, 95 S.Ct. 1612. As a result of *Alyeska*, awards of counsel fees were suddenly unavailable in actions brought under the most fundamental civil rights statutes. Senate Report, *supra*, at 5911. The aim of § 1988, therefore, was to regain consistency in the application of fee shifting under the civil rights acts. Id. at 5909.

aff'd, —— F.2d —— (2d Cir. 1978). On the contrary, their only concern was to provide services to a clearly disadvantaged class which is generally illiterate and poorly informed of its legal rights. See generally, American Bar Foundation Project, The Legal Problems of the Rural Poor [1969], Duke L.J. 495. Migrant farm workers have been a special concern of the Congress since the enactment of Title III–B of the Economic Opportunity Act of 1964, 42 U.S.C. § 2861 et seq. Federal funding for legal services to provide equal access for such workers to the system of justice is a clear indication of the strong congressional interest in their welfare. See 42 U.S.C. § 2996 et seq. In view of the intimate nexus between the action here commenced by Mid-Hudson to establish its right to communicate with the farm workers employed by G & U, and the exercise by the workers of their rights, we cannot agree that appellants were not acting to vindicate a general federal policy which § 1988 was designed to promote.

Furthermore, the legislative history of § 1988 indicates the concern of the Congress that attorneys who are acting as private attorneys general receive reasonable compensation for their services. "The remedy of attorneys' fees has always been recognized as particularly appropriate in the civil rights area, and civil rights and attorneys' fees have always been closely interwoven. In the civil rights area, Congress has instructed the courts to use the broadest and most effective remedies available to achieve the goals of our civil rights laws." Senate Report, supra, at 5910–11. See, e. g., Northcross v. Memphis Board of Education, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973); Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Fort v. White, 530 F.2d 1113, 1118 (2d Cir. 1976).

 In view of this clear congressional mandate we cannot accept that the statute must be construed narrowly as the district court held. Rather, § 1988 must be applied broadly to achieve its remedial purpose. Seals v. Quarterly County Court, 562 F.2d 390 (6th Cir. 1977); Wharton v. Knefel, 562 F.2d 550 (8th Cir. 1977). Although the farm workers here were not party plaintiffs seeking to vindicate their own First Amendment rights under § 1983, see Gay Lib v. University of Missouri, supra, Mid-Hudson was acting solely on their behalf and in pursuance of its own congressional directive to provide legal services to these uniquely disadvantaged workers. Thus, an award of legal fees in the discretion of the district court was within both the letter and spirit of § 1988.

## II

 Having decided that the district court had discretion to award legal fees here, the remaining issue is whether there was an abuse of discretion in their denial. The court below, while noting that the plaintiffs had prevailed in the action, nonetheless found that even if § 1988 were applicable to the case at bar, the defendants' activities did not evince the "kind of bad faith, viciousness or callous disregard for plaintiffs' rights that is generally redressed by an award of attorneys' fees," citing Christianburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) and Carrion v. Yeshiva University, 535 F.2d 722 (2d Cir. 1976). However, these cases both involved the issue of defendants' entitlement to attorneys' fees in defending against baseless charges of civil rights violations. In Christianburg the Supreme Court endorsed the view set forth by this court in Carrion v. Yeshiva University, supra, that a defendant may be entitled to reimbursement of legal fees where the action he was required to defend against was "unreasonable, frivolous, meritless, or vexatious." 98 S.Ct. at 700. As the Court in Christianburg recognized, however, the considerations underlying an award of attorneys' fees for a prevailing plaintiff in civil rights litigation are entirely different. Id. at 697–98. The plaintiff is vindicating a congressional policy of the highest priority and the defendant has violated federal law. Id. The legislative history of § 1988 notes that a successful plaintiff "should ordinarily recover an attorneys' fee unless special cir-

cumstances would render such an award unjust." Senate Report, *supra*, at 5912. See *Northcross v. Memphis Board of Education, supra; Newman v. Piggie Park Enterprises, Inc., supra.* Clearly that standard is the appropriate one to govern awards of counsel fees under the statute. E. g., *Beazer v. New York City Transit Authority, supra*, at 100.

Mid-Hudson was the prevailing party here and reasonable attorneys' fees under § 1988 were denied after the district court applied an erroneous test in determining whether to grant an award under that section. We therefore reverse and remand to that court for the purpose of determining the appropriate counsel fee to be awarded after an evidentiary hearing in accordance with our decision in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468–74 (2d Cir. 1974); see *Beazer v. New York City Transit Authority, supra*, at 100–01; *Torres v. Sachs*, 538 F.2d 10, 13 (2d Cir. 1976). At the hearing defendants will have the burden of establishing what special circumstances, if any, render any such award unjust.[3]

---

3. The plaintiffs have also appealed from the denial of costs, which in this case amount to a $15 filing fee. The taxation of costs is left to the discretion of the district court. F.R.Civ.P. 54(d); 6 Moore's Federal Practice ¶ 54–70[5]. It should be upset only in the event of an abuse of that discretion. *Farmer v. Arabian Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). However, in view of all the circumstances set forth above, we also remand the issue of costs to the district court for reconsideration.