**Antonietta SALVO, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**Case No. 93–CV–4170 (KMK).**

United States District Court, S.D. New York.

Nov. 8, 2010.

---

668

Irwin M. Portnoy, Esq., Irwin M. Portnoy & Associates, Newburgh, NY, for Plaintiff.

Leslie A. Ramirez–Fisher, Esq., Assistant United States Attorney, United States Attorney's Office, Southern District of New York, New York, NY, for Defendant.

## OPINION AND ORDER

KENNETH M. KARAS, District Judge:

Before this Court are a motion for entry of judgment in favor of Plaintiff Antonietta Salvo ("Plaintiff," or "Salvo"), and motions for attorney's fees pursuant to the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412 ("Section 2412"), by Plaintiff, and pursuant to the Social Security Act (the "SSA"), 42 U.S.C. § 406(b) ("Section 406(b)"), by Plaintiff's counsel, Irwin M. Portnoy ("Portnoy"). These motions follow a favorable decision for Plaintiff by Defendant Commissioner of Social Security ("Defendant," or the "Commissioner") after remand of this case to the Commissioner by the Honorable Charles L. Brieant, Jr. (Dkt. No. 9.)

### I. Background

On November 7, 1991, Plaintiff filed an application for disability insurance benefits, claiming a disability since August 2, 1982. (Admin. R. ("R.") 39–43.) Plaintiff's application was denied initially and on reconsideration by the Commissioner. (*Id.* 44, 47–50.) Plaintiff then timely filed a request for a hearing, which was held on December 15, 1992, before Administrative Law Judge ("ALJ") John W. Whittlesey. (*Id.* 10.) Plaintiff was not represented by counsel during this hearing. (*Id.*) On January 27, 1993, ALJ Whittlesey denied Plaintiff's application for benefits, finding that she was not disabled. (*Id.* 8–15.) The Appeals Council subsequently denied Plaintiff's request for review of ALJ Whittlesey's decision on May 7, 1993. (*Id.* 3–4.)

On June 18, 1993, Plaintiff, proceeding pro se, filed her Complaint in this action, alleging that ALJ Whittlesey had erred in denying her application for Social Security disability benefits. (Dkt. No. 1.) The case originally was assigned to Judge Brieant,[1] who remanded the case on November 15, 1993, under sentence six of 42 U.S.C. § 405(g) ("Section 405(g)"), to the Commissioner for further administrative proceedings.[2] (Dkt. No. 4.) On December 17,

---

1. The case was reassigned to this Court on August 18, 2008. (Dkt. No. 27.)

2. The sixth sentence of Section 405(g) provides: "The court may ... remand the case to the Commissioner ... for further action ..., and it may at any time order additional evidence to be taken before the Commissioner ..., but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner ... shall, after the case is remanded, and after hearing

1993, the Appeals Council remanded the case to ALJ Ralph A. Celentano. (R. Ex. 51.) On September 13, 1994, ALJ Celentano held a hearing on Plaintiff's application, wherein Plaintiff was represented by Portnoy, whom she had retained on May 4, 1994.[3] (Affirm. of Irwin M. Portnoy (Aug. 13, 2007) ("Portnoy Section 2412 Affirm."), App. 1.) ALJ Celentano issued a decision on July 22, 1995, denying Plaintiff's application and finding that she did not have any "severe impairments" limiting her ability to work prior to June 30, 1988. (R. 527–32, 543.) On March 23, 1996, the Appeals Council vacated ALJ Celentano's decision and again remanded the case. (*Id.* 599–602.) ALJ Celentano held another hearing and again denied Plaintiff's application on July 2, 1998, finding that Plaintiff was not disabled (*id.* 283–89), a decision which the Appeals Council affirmed on January 21, 1999, (*id.* 195–96).

Plaintiff subsequently filed a motion on February 26, 1999, in this action, to amend her Complaint and sought review of the Commissioner's adverse ruling. (Dkt. No. 5.) On April 23, 1999, Judge Brieant once again remanded the case for further administrative proceedings, pursuant to sentence six of Section 405(g).[4] (Dkt. No. 9.)

A hearing was held before ALJ Dennis Katz on July 25, 2001, and ALJ Katz subsequently issued a decision denying Plaintiff's application for benefits on August 16, 2001. (Portnoy Section 2412 Affirm., App. 24.) Plaintiff requested review of this decision by the Appeals Council, which re-manded the case to ALJ Katz, who issued a fully favorable decision on May 31, 2007, finding that Plaintiff suffered from Chronic Fatigue Syndrome ("CFS"), a depressive disorder, an anxiety disorder, and a somatic disorder. (*Id.* App. 28., at 12.)

On August 14, 2007, Plaintiff filed a motion for entry of a judgment in her favor and attorney's fees, pursuant to Section 2412. (Dkt. No. 10.) On October 3, 2007, the Commissioner issued a Notice of Award to Plaintiff, in which she was awarded retroactive benefits from the time period of November 7, 1991 through May 31, 2007 (when ALJ Katz issued his decision). (Supplemental Affirm. of Irwin M. Portnoy ("Supplemental Portnoy Affirm."), App. 4; Mem. in Supp. of Pet. for Allowance of Att'y Fees Under 42 U.S.C. § 406(b) ("Section 406(b) Mem.") 2.) In addition, the Commissioner informed Plaintiff's children that they would be awarded approximately $14,894.00. (Supplemental Portnoy Affirm., Apps. 1–3; Section 406(b) Mem. 2.) The Commissioner ultimately withheld $28,934.00 from Plaintiff's and her children's retroactive benefits for payment of attorney's fees. (Supplemental Portnoy Affirm., Apps. 1–4.)

## II. Discussion

■ Once the Commissioner has concluded its further development of the factual record and issued its facts and conclusions, pursuant to a Section 405(g) sentence-six remand, a court may enter a final judgment, *see Melkonyan v. Sullivan,* 501 U.S. 89, 102, 111 S.Ct. 2157, 115

---

such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision...." 42 U.S.C. § 405(g).

**3.** Portnoy represented Plaintiff in all subsequent proceedings related to her case. (Def.'s Opp'n to Pl.'s Mot. for Att'y Fees Under the Equal Access to Justice Act ("Def.'s Section 2412 Opp'n") 9; Mem. in Supp. of Pet. for Allowance of Att'y Fees Under 28 U.S.C. § 2412 ("Pl.'s Mem.") 9.)

**4.** The Court therefore retained jurisdiction. *See Rose v. Barnhart,* No. 01–CV–1645, 2007 WL 549419, at *2 (S.D.N.Y. Feb. 16, 2007) (noting that the court retains jurisdiction in sentence-six remands (citing *Shalala v. Schaefer,* 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993))).

L.Ed.2d 78 (1991), and award attorneys' fees as part of its judgment, *see Edwards ex rel. Edwards v. Barnhart*, 238 F.Supp.2d 645, 650 (S.D.N.Y.2003). Attorneys' fees are recoverable for time spent litigating claims in court and on remand under sentence six of Section 405(g). *See Edwards*, 238 F.Supp.2d at 650 (noting that if the plaintiff prevailed, he would be "eligible for fees covering his attorney's work at both the district court and administrative level"). In addition, fees may be awarded under both Section 2412 of the EAJA and Section 406 of the SSA, but the attorney must give the smaller fee to the client. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002) ("Fee awards may be made under both prescriptions, but the claimant's attorney must refund to the claimant the amount of the smaller fee." (internal quotation marks and alteration omitted)).

Here, Plaintiff claims $42,281.20 in attorney's fees, and $878.86 in costs, under Section 2412 of the EAJA. (Pl.'s Reply Mem. in Supp. of Mot. for Att'y Fees Under 28 U.S.C. § 2412 ("Pl.'s Reply") 15; Portnoy Section 2412 Affirm. 6, App. 32). Portnoy also seeks $28,933.50 in fees under Section 406(b) of the SSA, representing twenty-five percent of the past-due benefits awarded to Plaintiff.[5] (Section 406(b) Mem. 1, 8.)

*A. Attorneys' Fees Under Section 2412*

The EAJA provides in relevant part that "a court shall award to a prevailing party . . . fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that

special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Section 2412(d)(1)(B) requires a party seeking an award under the EAJA to file an application for fees within thirty days after a final judgment is issued, (1) showing that the plaintiff is a prevailing party and eligible to receive an award because her net worth does not exceed $2,000,000, (2) including an itemized statement of fees and expenses setting forth the amount sought, time spent, and payment rate, and (3) alleging that the position of the Commissioner was not substantially justified. *See* 28 U.S.C. § 2412(d)(2)(B); *see also Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). "Once a party has demonstrated that it is a prevailing party under the EAJA, the burden shifts to the government to demonstrate that its litigation position was substantially justified." *Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 786 (2d Cir.1999) (internal quotation marks omitted).

Portnoy's application satisfies all of these requirements. Portnoy filed his fee application within thirty days of final judgment.[6] The Commissioner concedes that Plaintiff was the prevailing party (Def.'s Section 2412 Opp'n 5), because she received a fully favorable decision from the Commissioner on remand. *See Mikol v. Astrue*, No. 05–CV–5355, 2008 WL 4222027, at *2 (S.D.N.Y. Sept. 12, 2008) ("[P]laintiff is . . . a prevailing party [if], at the conclusion of the administrative proceedings . . . carried out pursuant to this Court's sentence-six remand, he prevails."); *see also Edwards*, 238 F.Supp.2d at 655 ("[One] type of success is the eventual receipt of benefits after a sentence six

---

**5.** Portnoy's request for $28,933.50, pursuant to Section 406(b) of the SSA, is fifty cents off of the total, $28,934.00, actually withheld by the Commissioner. The Court will reference the latter figure in this Opinion.

**6.** Because this was a sentence-six remand, the thirty-day period will not begin to run until this Court enters final judgment. *See Melkonyan*, 501 U.S. at 102, 111 S.Ct. 2157 (noting that the thirty-day clock begins after final judgment is entered, following post-remand proceedings, and the appeal period has run).

remand."). Further, Plaintiff has set forth in an affidavit that her net worth is less than $2,000,000 (Portnoy Section 2412 Affirm., App. 3), and Portnoy has submitted an itemized list of his fees, (*id.* App. 5–15). Finally, the Commissioner concedes that the initial agency determination was not substantially justified. (Def.'s Section 2412 Opp'n 5.)

### 1. Whether Portnoy's Fees Should be Reduced

■ Even if an agency's position was not substantially justified, fees may be denied or reduced under the EAJA if a court finds that "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Holder v. Astrue,* No. 07–CV–2906, 2009 WL 910761, at *1 (S.D.N.Y. Apr. 3, 2009) ("[A] Plaintiff is entitled to an award of attorney's fees pursuant to the [EAJA] if the Plaintiff is the 'prevailing party,' the position of the government was not 'substantially justified,' and no 'special circumstances' exist that render an award of fees unjust."). An analysis of "special circumstances" in this context is governed by equitable considerations. *See Torres v. Barnhart,* No. 02–CV–9209, 2007 WL 1810238, at *13 (S.D.N.Y. June 25, 2007) ("The Second Circuit has held that courts should apply 'traditional equitable principles' to determine if 'special circumstances' exist." (quoting *Oguachuba v. I.N.S.,* 706 F.2d 93, 98 (2d Cir.1983))). Awarding attorneys' fees may be unjust, for example, where an attorney did not contribute appreciably to a favorable outcome, *see Hernandez v. Apfel,* No. 96–CV–7231, 2001 WL 118604, at *1 (S.D.N.Y. Feb. 8, 2001), or failed to adequately develop the record, *see Bryant v. Apfel,* 37 F.Supp.2d 210, 213–14 (E.D.N.Y.1999). The burden of establishing "special circumstances" that

may justify reducing a fee award is on the government. *Mid–Hudson Legal Servs., Inc. v. G & U, Inc.,* 578 F.2d 34, 38 (2d Cir.1978).

■ The Commissioner argues that special circumstances make the full award of attorney's fees in this case unjust. (Def.'s Section 2412 Opp'n 5.) Specifically, the Commissioner argues that from April 1994 through December 1996, while the case was on remand, Portnoy did not submit any medical reports that assisted in establishing that Plaintiff became disabled prior to June 30, 1988, the date when Plaintiff's insurance expired, (the "Relevant Period") and thus did not assist in the development of the record for the Relevant Period or contribute to the favorable outcome of the case. (*Id.* 6–7.)

The Court finds that the Commissioner's argument is undermined by evidence in the record introduced by Portnoy relating to the Relevant Period and by citations to evidence submitted by Portnoy in ALJ Katz's fully favorable decision. The Appeals Council remanded Plaintiff's case in December 1993 because the ALJ had not sufficiently developed Plaintiff's employment records or contacted several doctors who had treated Plaintiff during or shortly after the Relevant Period. (R. 423–24.) Plaintiff was proceeding pro se at this time (Def.'s Section 2412 Opp'n 1), and the ALJ therefore bore a heightened duty to develop the administrative record. *See Torres,* 2007 WL 1810238, at *9 ("Where a claimant appears at the hearing pro se … the ALJ 'is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" (quoting *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990))).[7] After remand, in January 1994, the ALJ attempted to

---

7. While a claimant generally bears the burden of proving disability, the ALJ has an affirmative duty to develop the record, *see Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir.2008), even when a claimant is represented by counsel, *see Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ

obtain treatment records from nine doctors but only received a substantive response from one. (Def.'s Section 2412 Opp'n 3–4.)

Upon being retained by Plaintiff, Portnoy successfully obtained records from three of these doctors (R. Ex. 68–69), as well as records from another treating physician from the Relevant Period, (*id.* 456–59). Portnoy also provided documents to ALJ Celentano on September 13, 1994 from another one of Plaintiff's treating physicians, Dr. Joseph Ascoli, including a retrospective report Dr. Ascoli completed in 1992. (*Id.* 449–451, Ex. 23.) Dr. Ascoli stated that Plaintiff exhibited significant symptoms that were largely psychosomatic (*id.* 451), consistent with Plaintiff's later diagnoses, and which ultimately led to her fully favorable disposition. In fact, Portnoy correctly argued in 1994 (*id.* 451–52), that because this was the opinion of a treating doctor, it should be accorded special deference or controlling weight, *see Shaw v. Chater*, 221 F.3d 126, 133–34 (2d Cir.2000) (noting that under the SSA's "treating physician rule," the "medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence). In his September 13, 1994 letter, Portnoy also pointed out that Dr. Ascoli's diagnosis was supported by records from other doctors, who reported that Plaintiff suffered from anxiety and referred her for psychiatric evaluation. (R. 451.) In addition, Portnoy requested that ALJ Celentano elicit testimony from a vocational expert as early as February 1996 (*id.* 555),

but the Appeals Council did not require the ALJ to obtain such testimony until 2005, (*id.* 912).[8]

The evidence submitted by Portnoy ultimately played a substantial role in ALJ Katz's favorable determination in 2007. (Portnoy Section 2412 Affirm., App. 28, at 10.) In that decision, ALJ Katz referenced nine medical records from the Relevant Period regarding Plaintiff's physical impairments. (*Id.* App. 28, at 7.) Three of those records were attached to the letter from Portnoy to ALJ Celentano on September 13, 1994. (R. Ex. 68.) Two of the other records referenced by ALJ Katz were submitted to the Social Security Administration in 1992 and offered no opinion about Plaintiff (R. Ex. 27, 35), and another addressed Plaintiff's back pain but was inconclusive, (*id.* Ex. 86). While Portnoy arguably bears some responsibility for not obtaining the last record referenced by ALJ Katz, a medical record from one of Plaintiff's doctors, Dr. Michael A. Eufemio, dated April 13, 1984 (*id.* 651), it is notable that Dr. Eufemio had written to the ALJ in October 1992 that he could not opine about Plaintiff's disability during the Relevant Period (*id.* Ex. 35), and did not submit the record cited by ALJ Katz until 1996, following multiple requests, (*id.* Ex. 85).

Defendants argue that Portnoy's failure to submit until 1997, a report by Dr. Bernstein, one of Plaintiff's treating physicians, was pivotal in the late grant of benefits to Plaintiff. However, this argument is undermined by the fact that Plaintiff did not prevail until 2007. Indeed, the Appeals Council stated in 1999 that Dr. Bernstein's

---

generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel .... " (internal citation omitted)).

**8.** The ALJ should have sought this testimony because Plaintiff had non-exertional impairments, evidenced by her subjective com-

plaints, which limited her ability to function. *See Bapp v. Bowen*, 802 F.2d 601, 603–06 (2d Cir.1986) (holding that testimony of a vocational expert may be needed where non-exertional impairments, such as subjective complaints, significantly limit a claimant's functional abilities).

report and affidavit had "little weight, as they pertain to an examination performed almost 10 years after the claimant was last insured." (*Id.* 195.) Moreover, in 2007, another doctor, Dr. Halperin, joined Dr. Bernstein's diagnosis of a psychosomatic disorder, and both gave retroactive diagnoses that Plaintiff suffered from a disability during the Relevant Period. (Portnoy Section 2412 Affirm., App. 28, at 8–9.) In accepting their diagnoses, ALJ Katz assumed that Plaintiff's symptoms had existed during the Relevant Period and that Plaintiff was disabled at that time based on the letters Portnoy submitted to ALJ Celentano on September 13, 1994. (*id.*) ALJ Katz also discussed medical records regarding Plaintiff's mental impairments (Portnoy Section 2412 Affirm., App. 28, at 9–11), including a record that Portnoy had referenced in his September 13, 1994 letter to ALJ Celentano, (R. 450, Ex. 19).

Accordingly, while there may have been gaps in the administrative record, for which both Portnoy and the Commissioner each bear some responsibility, a favorable decision nevertheless was eventually issued. Further, the record shows that the Commissioner's revised decision was based not solely on development of the record, but on reconsideration of prior findings by the Commissioner. In addition, the difficulties both Portnoy and the Commissioner had in obtaining records from the Relevant Period are also explained by the lack of substantial records from the Relevant Period and the nature of Plaintiff's medical complaints, which include a variety of physical symptoms that elude easy diagnosis, some of which are likely caused by underlying psychological problems. (*Id.* 216; Portnoy Section 2412 Affirm., App. 28, at 8–9.)

This Court therefore finds that Portnoy's efforts from 1994 to 1996, were sufficient, given the evidence available at the time, and that the evidence submitted by Portnoy played a significant role in ALJ's Katz's ultimately favorable determination. *Cf. Bryant,* 37 F.Supp.2d at 213 (denying attorney's motion for fees because he did not seek or produce critical records and because he only sought and produced records at the direction of the district court). While Portnoy arguably should have obtained additional records, this played only a minor role in the continuation of the litigation. Accordingly, the Court denies the Commissioner's motion to deny Portnoy the full amount of attorney's fees he requests on this basis.

### 2. Whether Portnoy Expended an Unreasonable Amount of Time

The Commissioner further argues that Portnoy spent an unreasonable amount of time on several tasks for which he claims fees and that any fee award should be reduced accordingly.[9] (Def.'s Section 2412 Opp'n 8.)

---

**9.** Section 2412(d)(2)(A) limits attorneys' fees to $125 per hour unless the cost of living or special circumstances justify a higher fee. *See* 28 U.S.C. § 2412(d)(2)(A). Cost of living adjustments may be made for inflation and calculated according to the Consumer Price Index ("CPI") for each year in which services were performed. *See Ortiz v. Chater,* No. 95–CV–3126, 1997 WL 50217, at *5 (E.D.N.Y. Jan. 30, 1997) (citing *Harris v. Sullivan,* 968 F.2d 263, 265–66 (2d Cir.1992)). Portnoy submitted data regarding the CPI for the years in which he claims fees, showing a range of about $128 per hour to about $180 per hour. (Portnoy Section 2412 Affirm. 5–6, App. 30.) He requests $34,638.66 in fees for 229.85 hours of work during the period before filing this application (*id.* 5–6, App. 5–15), which averages out to about $150 per hour. The Commissioner does not contest the fee rates used by Portnoy, and the Court finds that they are reasonable. *See Destefano v. Astrue,* No. 05–CV–3534, 2008 WL 623197, at *3 n. 4 (E.D.N.Y. Mar. 4, 2008) (approving attorneys' fees under the EAJA at a rate adjusted for the CPI and not challenged by defendant), *report and recommendation*

■ Attorneys are not entitled to fees under the EAJA for work that is unreasonable, redundant, excessive, or unnecessary. *See Torres*, 2007 WL 1810238, at *14 (noting that hours that were not " 'reasonably expended' " or were " 'excessive, redundant, or otherwise unnecessary' " should be excluded (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983))). District courts enjoy broad discretion in ruling on fee awards under the EAJA, *see id.* at *14, and need not scrutinize the time spent on each itemized task for which fees are requested, *see Aston v. Sec'y of Health & Human Servs.*, 808 F.2d 9, 11 (2d Cir. 1986). Nevertheless, "the Court has a duty to discount any 'exorbitant, unfounded, or procedurally defective fee applications' and ensure the final award is reasonable." *Torres*, 2007 WL 1810238, at *14 (alteration omitted) (quoting *Jean*, 496 U.S. at 163, 110 S.Ct. 2316). Although many district courts in the Second Circuit find that twenty to forty hours is a reasonable amount of time to spend on routine Social Security cases, fees have regularly been awarded far in excess of this amount. *See id.* at *15 (" '[T]he courts in this district have not hesitated to award attorney's fees well in excess of the routine twenty to forty hours where the facts of the specific case warrants award.' " (alterations omitted) (quoting *Hinton v. Sullivan*, No. 84–CV–9276, 1991 WL 123960, at *5 (S.D.N.Y. July 2, 1991))). Here, as discussed above, the Court finds that this case was not routine, given its lengthy procedural history (almost fourteen years) and the numerous evidentiary and other obstacles encountered by both Plaintiff's counsel and the Commissioner. *See Aston*, 808 F.2d at 11–12 (affirming award of attorneys' fees for 200 hours of work); *Bagley v. Comm'r of Soc. Sec.*, No. 02–CV–0285, 2008 WL 3925632, at *4 (N.D.N.Y. Aug. 20, 2008) (approving fees for 91.25 hours in social security case).

Defendant first argues that Portnoy expended an unreasonable amount of hours on several tasks. The Court agrees, but only in part. Portnoy claims fees equaling $2,486.27 for 18.41 hours he spent drafting a letter brief which he sent to the Appeals Council on February 22, 1996 (Portnoy Section 2412 Affirm., App. 8, 19), and additionally claims fees equaling $2,703.86 for 19.25 hours for a letter brief he submitted to the Appeals Council on December 3, 1998. (*Id.* App. 10, 22.) [10] While portions of these letters are duplicative, in terms of their description of the procedural history of the case and Plaintiff's medical history, the particular arguments made therein differ. (*id.* App. 19, 22.) Thus, the time spent on each letter was not unreasonable given the volume of documents and records that Portnoy had to synthesize and the lengthy history of the case. *See Hinton*, 1991 WL 123960, at *5 (finding hours spent on reviewing voluminous records in complex case were reasonable).

■ Defendant also objects to Portnoy's request for reimbursement at an attorney rate for various clerical tasks. In particular, Defendant argues that several courts have held that tasks which can be performed by paralegals, clerical staff, or other non-attorneys should be not be billed at

---

*adopted by* 2008 WL 2039471 (E.D.N.Y. May 9, 2008).

**10.** The figures contained in the Portnoy 2412 Affirmation, appendices 5–15, use a fee rate of $250 per hour. However, the total amount of fees Portnoy is actually requesting under the EAJA was calculated using the rates contained in the CPI, (Portnoy 2412 Affirm., App. 30). *See supra* note 9. Therefore, the Court disregards the figures contained in appendices 5–15, which were calculated using the $250 per hour rate, and uses the CPI rates to calculate the figures that appear in this Opinion.

an attorney rate. *See Destefano*, 2008 WL 623197, at *3 ("[T]he Court concurs that some entries appear to be clerical and thus should not be billed at an attorney rate, if at all."). The Court agrees. Specifically, the Court finds that a reduction of $749.46 is appropriate, which is the amount billed for the following clerical tasks: (1) on July 26, 1994, Portnoy billed 1.33 hours ($170.21) for a telephone conversation with the Office of Hearings and Appeals regarding the hearing date and time and docketed the hearing date (Portnoy Section 2412 Affirm., App. 5); (2) on August 16, 1995, Portnoy admits he mistakenly billed .72 hours ($94.46) for clerical work (Pl.'s Reply 14; Portnoy Section 2412 Affirm., App. 7); (3) on January 14, 1997, Portnoy billed .50 hours ($69.10) for copying the case file for review by Doctors Schachter, Leahy, and Levine (Portnoy Section 2412 Affirm., App. 9); (4) on June 12, 2006, Portnoy billed .30 hours ($53.58) for faxing correspondence to ALJ Katz (*id.* App. 14); (5) on March 6, 2007, Portnoy billed .20 hours ($36.21) for faxing two letters (*id.* App. 15); (6) on March 8, 2007, Portnoy billed .40 hours ($72.42) for faxing correspondence to ALJ Katz (*id.* App. 15); (7) on May 7, 2007, Portnoy admittedly billed 1.2 hours ($217.27) for clerical tasks (Pl.'s Reply 15; Portnoy Section 2412 Affirm., App. 15); and (8) on May 31, 2007, Portnoy billed .20 hours ($36.21) for a telephone call to Dr. Vela's office to cancel his request for notes (Portnoy Section 2412 Affirm., App. 15).[11] The Court has reviewed the other time entries cited by Defendant as being clerical in nature and while certain of those entries do have a clerical element, it is apparent that Portnoy billed not for the clerical task but rather for his direct involvement in, or supervision of, a legally substantive task. (*See, e.g., id.* App. 12 (billing .20 hours for reviewing and docketing the Notice of Hearing on June 26, 2001, and billing .30 hours for a telephone conference with client and printing and mailing the Appeals Council memorandum on December 18, 2001).)

 Finally, Defendant objects to Plaintiff's request for $7,642.54, for 42.21 hours of preparation of the instant fee applications (Supplemental Affirm. in Supp. of Att'y Fees Under 28 U.S.C. § 2412 ("Supplemental 2412 Affirm.") ¶ 7). The Court finds that this amount of time is excessive. *See Luessenhop v. Clinton County*, 558 F.Supp.2d 247, 270–71 (N.D.N.Y.2008) (reducing recovery hours for fee application where time spent was excessive), *aff'd*, 324 Fed.Appx. 125 (2d Cir.2009); *Brady v. Wal–Mart Stores, Inc.*, 455 F.Supp.2d 157, 212 (E.D.N.Y.2006), *aff'd*, 531 F.3d 127 (2d Cir.2008) (stating that the court "would be remiss if [it] did not trim some of the fat from [the] fee application in light of the clear excessiveness of the billing for its preparation"). Considering the fact that most courts have found twenty to forty hours to be the appropriate number of total hours billed for a Social Security case, *see Torres*, 2007 WL 1810238, at *15, Portnoy's request for fees in the preparation of the fee applications in the amount of 42.21 hours is excessive. Accordingly, the Court finds that twenty hours is reasonable, and, therefore, that a reduction of the fees by $4,021.34 is appropriate. Added up, the Court finds that the total requested amount of $43,160.06 in attorney's fees and costs should be reduced by $4,770.80, for a total of $38,389.26.

*B. Attorneys' Fees Under Section 406(b)*

 Separate from the claim for fees under § 2412 of the EAJA, Portnoy seeks fees under § 406(b) of the SSA, in the

---

11. These figures were calculated using the fee rates from the CPI, which vary depending on the year in which a given task was completed. *See supra* note 9.

amount of $28,933.50.[12] (Section 406(b) Mem. 8.) This represents twenty-five percent of the past-due benefits that Mrs. Salvo received. In order to obtain attorneys' fees under Section 406(b), three elements must be satisfied: (1) there must be a judgment that is favorable to the claimant; (2) the fee must be awarded as part of the court's judgment; and (3) the fee must not exceed twenty-five percent of the total amount of past-due benefits rewarded to the claimant. *See* 42 U.S.C. § 406(b)(1)(A); *see also Wells v. Sullivan*, 907 F.2d 367, 370 (2d Cir.1990) (noting that a court may award reasonable attorneys' fees not exceeding twenty-five percent of Plaintiff's past-due benefits and recognizing validity of contingency agreement for that amount).[13] This fee is payable out of the plaintiff's past-due benefits that have been awarded by the court. *See Gisbrecht*, 535 U.S. at 795, 122 S.Ct. 1817. A court may reduce the amount awarded under Section 406(b) only if it finds it to be unreasonable. *See Wells*, 907 F.2d at 371 (citing *McGuire v. Sullivan*, 873 F.2d 974, 981 (7th Cir.1989)). In determining whether an award under Section 406(b) is reasonable, courts have considered numerous factors, including: (1) whether the retainer was the result of fraud or overreaching; (2) whether the attorney was ineffective or caused unnecessary delay; (3) whether the fee would result in a windfall to the attorney in relation to the services provided; and (4) the risk of loss the attorney assumed by taking the case. *See Wells*, 907 F.2d at 372; *McGuire*, 873 F.2d

at 981; *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir.1989).

▪ Here, Plaintiff received a fully favorable decision on remand and the Court must now enter a judgment in Plaintiff's favor. *See Melkonyan*, 501 U.S. at 102, 111 S.Ct. 2157. The Court finds that Portnoy's motion for an attorney's fee of twenty-five percent of the past-due benefits awarded to Plaintiff, consistent with his contingency fee arrangement with Plaintiff, is a reasonable award.[14] "[I]n crafting [Section] 406(b), Congress did not intend to prohibit fee awards based on contingency fee arrangements, but rather meant to 'call for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases.'" *Benson v. Astrue*, No. 04–CV–8358, 2009 WL 82581, at *2 (S.D.N.Y. Jan. 6, 2009) (alteration omitted) (quoting *Gisbrecht*, 535 U.S. at 807, 122 S.Ct. 1817). This case, as discussed above, was complex and had an uncertain outcome, particularly given the nature of Plaintiff's disability. The case thus required Portnoy to spend a significant amount of time and effort to successfully overcome several obstacles, including a difficult evidence-gathering process, and the representation of Plaintiff at numerous proceedings following two remands by the Appeals Council and a remand by this Court. In addition, as the lesser of the two amounts of fees between the Section 2412 award and the Section 406(b) award, this fee will go to Plaintiff, not Portnoy.[15] *See Benson*, 2009 WL

---

**12.** The Commissioner actually withheld $28,934.00, *see supra* note 5.

**13.** Section 406(b) provides: "Whenever a court renders a judgment favorable to a claimant ... who was represented before the court by an attorney, the court may ... allow ... a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment...." 42 U.S.C. § 406(b)(1)(A).

**14.** Attorneys' fees may be granted based on the past-due benefits due a claimant's children under Section 406(b), *see Shackles v. Barnhart*, No. 04–CV–0822, 2006 WL 680960, at *1 (E.D.Pa. Mar. 15, 2006), which the Court also finds is reasonable here.

**15.** As noted, the SSA already has withheld twenty-five percent of the award it issued to Plaintiff, noting that it "usually withhold[s] 25 percent of past due benefits in order to pay

82581, at *2 ("Although attorneys may seek awards under both [Section] 406 and the EAJA, an attorney who recovers under both provisions must return the smaller award to the claimant.").

### III. Conclusion

For the reasons discussed above, the Court finds that Plaintiff's motions for attorney's fees are granted. Judgment is entered in favor of Plaintiff and attorney's fees are awarded in the amounts of $38,389.26, pursuant to Section 2412 of the EAJA, and $28,934.00, pursuant to Section 406(b) of the SSA, with the smaller of the two awards to be paid to Plaintiff. The Clerk of the Court is respectfully requested to terminate the pending motions (Dkt. Nos. 10 & 20), enter judgment for Plaintiff, and close the case.

SO ORDERED.

the approved lawyer's fee" and therefore withheld "$25,210.50 . . . in case [it needed] to pay" Plaintiff's lawyer. (Supplemental Affirm., App. 4, at 2.) The SSA similarly withheld twenty-five percent of the awards to Plaintiff's three children, in the amounts of $990 (*id.* App. 1, at 2), $155.25 (*id.* App. 2, at 1), and $2,578.25 (*id.* App. 3, at 1), for a total of $28,934.00. Because the SSA has already withheld this amount, the Court is perplexed by the government's assertion that the market rate that can be imputed to this amount is excessive. (*See* Gov't Ltr. to the Court, Oct. 9, 2008, at 4.) In any event, Portnoy has explained in detail the hours he worked on this case, thus there is nothing excessive about this fee (which will be refunded to Plaintiff).